# Wheeling.

## LORENZO COLE *vs.* JOHN RADCLIFF *et al.*

### January Term, 1870.

It is held that a party is liable as a joint trespasser, in an action for assault and battery, arrest and false imprisonment, where he was engaged in a raid made by a party of about three hundred rebels, which captured the plaintiff, though not present at the capture, and where he was with the party that captured him, at camp on the night of the capture; and where he was along with the squad for a considerable portion of the time and distance travelled by it, that took the prisoner, with others captured on the raid, to Richmond. His connection with the company, his presence with the parties having the prisoners in charge and guarding them on the return, and way to Richmond, shows his participation with the illegal detention and imprisonment so as to fix his guilt in the premises as a joint trespasser.

This was an action of trespass, for false imprisonment, brought by Lorenzo Cole, against John Radcliff, Milton Radcliff, and others, in the circuit court of Taylor county, to October rules, 1865. The plea on which the case was tried, was not guilty. The jury found a verdict of 300 dollars damages, subject to the opinion of the court. On a demurrer to evidence by the defendants Radcliff, judgment was rendered thereon for them. The evidence is substantially given in the opinion of President Brown.

The judgment of the court below was rendered at the May term, 1868.

Cole brought the case here for review.

Hon. John A. Dille, judge of the circuit court of Taylor county, presided on the trial of the case.

*Stanton & Allison* for the plaintiff in error.

The only question made by the record in this case is, whether upon the evidence demurred to, other defendants who were discharged by the court could be held for the trespass and false imprisonment complained of.

On demurrer to evidence, "every fact is considered as "admitted, which the jury could infer from the evidence "demurred to." 2 Tucker's Com., 297; 2 Tidd's Pr., 866.

"A demurrer to the evidence admits every conclusion "which the jury might have drawn from the evidence." *Lowry* vs. *Mountjoy*, 6 Call, 53.

"In a demurrer to evidence, it is not necessary to enter "on the record an admission of all proper inferences from "the facts, but it may be left to the court to draw such in-"ferences." *Wettington et al.* vs. *Christian*, 2 Rand., 353.

"On a demurrer to evidence, the demurrant waives all "his own evidence that at all conflicts with the evidence of "the other party, admits the truth of his adversary's evi-"dence, admits all inferences of fact that may be fairly de-"duced from that evidence, and submits it to the court to "deduce such fair inferences." *Clapton* vs. *Morris*, 6 Leigh, 278.

Starting with these well settled principles, it is fairly deducible from the evidence, that the parties found not guilty by the court on the demurrer to the evidence, were countenancing, counseling, aiding, assisting, or encouraging the arrest or detention of the plaintiff.

"When an immediate act is done by the co-operation, or "the joint act, of two or more persons, they are all trespas-"sers, and may be sued jointly or severally, and any one of "them is liable for the injury done by all, even to the extent "of exemplary damages." 2 Hilliard on Torts, 310.

"So all who aid, command, advise, or countenance the "commission of a tort by another, or who approve of it af-"ter it is done, are liable, if done for their benefit, in the "same manner as if they had done the tort with their own "hands." 2 Hilliard on Torts, 311.

"Mere bodily presence, without any attempt to prevent "the crime, though it will not of itself constitute guilty "participation, is evidence from which a jury may infer his "consent and concurrence." 3 Greenl. Ev., § 41.

"If one procure another to cause a felony to be commit- "ted by some third person, and he does so, the procurer is "accessory before the fact, though he never saw or heard of "the individual finally employed to commit the crime." 3 Greenleaf on Ev., sec. 42.

"Where the principal acts under instructions from the "accessory, it is not necessary in order to affect the latter, "that the instructions be proved to have been literally or "precisely followed. It will be sufficient if it be shown that "they have been substantially complied with." 3 Greenl. on Evidence, sec. 44.

"Every one who enters into a common purpose or design, "is generally deemed in law a party to every act which may "afterwards be done by the others, in pursuance of the com- "mon design." 1 Greenl. Ev., sec. 111.

"When several conspire together for the same illegal pur- "pose, each is the agent of all the rest, and every act done "by one in furtherance of the unlawful design is, in con- "sideration of law, the act of all." 2 Starkie on Ev., 403.

"If war be actually levied, that is, if a body of men be "actually assembled for the purpose of effecting by force "a treasonable purpose, all those who perform any part, "however minute, or however remote from the scene of "action, and who are actually leagued in a general conspi- "racy, are to be considered traitors." Ch. Jus. Marshall in *Swartwout's case*, 4 Cranch, 75.

"The action of trespass for false imprisonment is in some "respects peculiar, and differs from an action for an ordi- "nary assault and battery and other trespasses in this, that "the trespass does not consist in a distinct and single act, "but in the continuous violation of personal liberty, and "every continuation of an illegal imprisonment constitutes "a new trespass for which an action may be maintained."

"Where a party is present during a part of the time of "the illegal imprisonment of another, and gives aid and "comfort, counsel, direction and encouragement to those "engaged in it, he is personally liable for the trespass." *Ruffner* vs. *Williams*, 3 W. Va. Rep., 243.

These authorities establish the proposition that when any number of persons are engaged in an unlawful conspiracy, they are all jointly and severally liable for all acts. done by any one of them in pursuance of the common design.

The evidence demurred to, shows that the plaintiff was a laborer employed by the government of the United States in repairing roads. The Radcliffs belonged to a band of conspirators who were organized for the overthrow of the governments of the United States and of this State. In pursuance of the plan of operations adopted by the conspirators, and for the purpose of carrying into execution the common design, these defendants, with from 200 to 500 others, made an incursion into this State for the purpose of capturing loyal citizens who were sustaining the government. If it were necessary to maintain this action, we should hold that it was no matter whether these defendants were in this particular raid or not, if they were at the time in the service or rendering aid to the conspirators.

William Price says that he saw John Radcliff with the party that captured the plaintiff.

Joseph Bartlett says he heard them both say they were in the raid by which the plaintiff was captured.

Jedediah Bartlett says he heard them both say they were in a raid, but don't know what raid they referred to.

William Benson, a rebel soldier who was in the party by whom the plaintiff was captured, says both of the Radcliffs were along.

How, upon a demurrer to this evidence, these men could be discharged, we cannot understand. They were not only parties to the general conspiracy against the government, but they were engaged with the parties by whom the plaintiff was captured. And it is no matter whether they were

336    COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,          Cole vs. Radcliff et al.          1870.

personally present at the precise time and place when and where he was captured. If they were in pursuit of other parties ten or twenty miles distant, but engaged in the common design, they were just as guilty as if they had been personally present and had laid hands on him. Or, if they were personally present after his capture, and while he was in custody, aiding or giving countenance to those who had him in custody, they are just as much responsible for his detention, as they would have been if they had captured him .

In the case of *Shepherd* vs. *McQuilken*, 2 W. Va. Rep., 90. Henry Shepherd, who was found guilty, was not one of the party of soldiers by whom the trespass was committed, but came to the store when the trespass was being committed, on horseback, and sat upon his horse and watched the parties engaged in it without expressing any disapprobation of the act, and after it was over, received an umbrella and some other small articles and took them away with him. It was held that his conduct conduced to prove that he countenanced and approved the trespass, and the court refused to set aside the verdict.

In the case of *Williams* vs. *Freeland*, 2 W. Va. Rep., 306, the proof was that there was an expedition into the county of Hardy, made by a detachment of the rebel army composed of several regiments. That the 11th regiment of Virginia cavalry took the cattle for which the suit was brought. That Williams belonged to the seventh regiment, which was not present at the time the cattle were taken, but had gone on the march in the direction of New Creek, and did not join the portion of the troops that drove off the cattle until several days afterwards. There was no proof that the regiment to which Williams belonged assisted in driving the cattle at any time. It was held that all the troops composing the expedition were engaged in an unlawful expedition, and were jointly and severally liable for each other's acts. It seems to us, that upon the well settled and incontrovertible principles, the Radcliffs should have been held

on the demurrer, and that the judgment of the circuit court must be reversed, and judgment rendered in this court against the Radcliffs for the amount of damages found by the jury.

BROWN, President.

This is an action for trespass and imprisonment of the plaintiff by the defendants. Plea, not guilty. Demurrer to the evidence by the defendants, Milton and John Radcliff, and joinder therein by the plaintiff, and judgment thereon for the defendants. The evidence shows that the defendant John Radcliff was not only a party engaged in the raid made by a party of about 300 rebels, which captured the plaintiff, and though not present at the capture, was with the party at camp on the night of the capture, and was along with the squad for a considerable portion of the time and distance, that took the prisoners captured on the raid, and among them the plaintiff, to Richmond. His connection with the company; his presence with the parties having the prisoners in charge, and guarding them on the return, and way to Richmond, show his participation with the illegal detention and imprisonment, so as to fix his guilt in the premises as a joint trespasser.

But as to the defendant Milton Radcliff, though he was a party in the raid, yet was not present at the capture, and had nothing to do with it, and is not shown by any subsequent act to have been connected with or participated with those who took or guarded the prisoners, or was otherwise connected with the capture and detention of the plaintiff, or either of the other prisoners, save that he had been with the raiding party.

The purpose of the raid is stated in the evidence to have been the capture of yankee soldiers, not citizens. The plaintiff was a citizen and not a soldier, nor connected with the army. The evidence fails to establish a common intent or conspiracy to capture the plaintiff as the object of the expedition, as will make the defendant Milton Radcliff res-

ponsible for acts of others, done when and where he was not present, of which he had no knowledge, and in no way aided nor counseled, nor by his acts or presence subsequently approved, aided or countenanced. I think, therefore, the evidence fails to show him guilty of the trespass alleged, and the judgment of the court was right as to him.

I am, therefore, of opinion to reverse the judgment of the circuit court, and give judgment on the verdict on the demurrer to the evidence, for the plaintiff, for 300 dollars, the amount of the damages assessed by the jury, with interest from the date of the judgment, against the said John Radcliff, with costs in both courts; and a further judgment against the plaintiff in favor of the defendant Milton Radcliff, that he go thereof without day and have his costs and damages in both courts.

The other judges concurred.

JUDGMENT REVERSED.